

BOSTON    NEW YORK
www.psdfirm.com
**POLLACK SOLOMON DUFFY LLP**
31 St. James Ave . Suite 940 . Boston, MA 02116
617.439.9800

April 3, 2023

**By Email PDF and ECF**

Patrick Callahan, Esq. (*patrick.callahan@usdoj.gov*)
David J. Derusha, Esq. (*david.derusha@usdoj.gov*)
Abraham R. George, Esq. (*abraham.george@usdoj.gov*)
Christopher Looney, Esq. (*christopher.looney@usdoj.gov*)
U.S. Attorney's Office
One Courthouse Way
Boston, MA 02210

   Re: *United States v. Chin, et al.,* No. 21-cr-10256-RWZ

Dear Counsel:

  We are in receipt of your March 14, 2023 letter responding to our February 28, 2023 letter concerning certain outstanding discovery items. In an ongoing effort to avoid motion practice if possible, we are writing to follow up on several items in those letters. Counsel for Mr. Humad join in this letter and the requests it makes.

1. Our letter asked for confirmation that your office has searched all files of pertinent civil investigative agencies, including notes of civil investigators, for *Brady* material. Your response merely asserts that you understand your *Brady* obligations and will comply with them. The civil and criminal investigations have involved at least overlapping attorneys. We again ask specifically for confirmation that your office has searched all files of all pertinent agencies, including notes of investigators, and regardless of whether the investigators worked on only this case, the related civil case, or both. *See*, *e.g.*, *United States v. Bases*, 549 F. Supp. 3d 822, 828 (N.D. Ill. 2021) ("whether the agencies engaged in joint fact-gathering and whether they conducted separate, parallel investigations are not mutually exclusive," and the government must "use reasonable diligence" to gather *Brady* material from agencies in related investigations).

2. Your letter declines to provide the affidavit requested regarding interactions between the civil and criminal investigators and attorneys, as well as information as to those who have been given access to grand jury materials. We ask that you reconsider, in light of certain unusual aspects of this case and the related civil case. As you know, the government first pursued civil claims against the criminal defendants and others, before bringing any criminal charges. The government then engaged in extensive settlement discussions with

April 3, 2023
Page 2

attorneys for the civil defendants. Only once those settlement discussions appeared to be breaking down was an indictment returned. In addition, at least two attorneys in your office worked on the civil case for years, and are now working on the criminal case. One appeared for the government in the civil case as early as November 2015, withdrew from that case in March 2020, and then re-appeared for the government in the criminal case several months later. Another appeared in the civil case in June 2018, also withdrew in March 2020, and also re-appeared in the criminal case several months later. The timing of these events at least raises questions about the interactions between the civil and criminal teams, warranting the information that we have requested. *See*, *e.g.*, *United States v. Rhodes*, 18-CR-887 (JMF), Doc. 47, Memorandum Opinion and Order (S.D.N.Y. June 18, 2019) (ordering the government to provide a supplemental affidavit "detailing, with specificity, the nature and extent of any and all communications between the SEC and those involved in the criminal investigation" and attaching "to it copies of any such substantive communications").

3. Our letter asked about devices, and data from devices, of which the government has taken possession. We asked that you confirm that the government has searched the entirety of such devices and data for all discoverable material. Your letter answered only as to the five specific devices, and data collected from those particular devices, that earlier discovery letters had disclosed. It did not provide confirmation with respect to any other devices or data. Did the government take possession of any devices (or data from devices) other than the Balzer laptop, the three Balzer phones, and the Montone phone? If so, please confirm that the government has searched the entirety of any such other devices or data from them for all discoverable material. *See*, *e.g.*, *United States v. Gibson*, No. CR 15-CV-10323-IT, 2016 WL 3248206, at *2 (D. Mass. June 10, 2016), *objections overruled and order amended by*, No. 1:15-CR-10323-IT, 2016 WL 3566198 (D. Mass. June 24, 2016) (finding an "entire portion of computer server" that a law firm "voluntarily" provided to the government to be "in its custody, possession or control for discovery purposes," despite a protocol agreement with the law firm that was ineffective to limit the government's obligations once "physically held and controlled by it," and therefore ordering that "the government must produce any information on the server consistent with the government's statutory and constitutional discovery obligations").

4. Our letter asked specifically about data from the Balzer laptop that the government obtained. Your letter responded that "the Government reviewed the entirety of the contents of the laptop to identify files within the scope of the *search warrant*." Our letter, however, asked for information about the government's search for *all* discoverable information, not just information that the government has determined to be within the scope of the search warrant, particularly in light of your earlier letter's express statement that information outside the scope of the search warrant was not being produced. Your letter does not answer that question about all discoverable information, and instead merely repeats that the government searched for files within the scope of the search warrant. Did the government search the entirety of the laptop's contents for discoverable material generally, not for only material within the scope of the search warrant? *See*, *e.g.*, *id*.

April 3, 2023
Page 3

5. With respect to two of the three Balzer phones, your letter states that "the Government has produced to you copies of the full Cellebrite extractions of those phones," but does not reveal how the extractions were conducted in a way that tells us whether the entirety of the phones was searched, and whether the search was limited in any way. Were the entire contents of the phones subjected to the extraction process and included in what was extracted and produced? Or was the extraction limited in any way? *See*, *e.g.*, *id.*

6. With respect to the third Balzer phone, your letter commits to searching the phone, but again limits the search and production to "material that falls within the scope of the *search warrant*." Once again, please confirm that the entirety of the phone will be searched and that all discoverable information will be produced, not just information within the scope of the search warrant. *See*, *e.g.*, *id.*

7. With respect to the Montone phone, we understand from your response that the government's position is that the limited consent to search that Dr. Montone provided, purportedly out of privilege concerns, relieves the government of the obligation to search the entire phone for discoverable materials. That position is not viable, as the government's possession of material subjects that material to Rule 16's discovery obligations, regardless of any agreements that the government has made with third-parties with respect to accessing that material. In fact, the Court has previously rejected your position, including efforts to use an agreement between the government and third-parties to which defendants were not parties, and purported privilege concerns, to avoid searches of materials that are in the government's possession. Specifically, in another case in which your office took the position that you are apparently also taking here, the government chose to take possession, subject to a limited-access agreement, of a law firm's server, thus implicating privilege concerns for not just the producing party, but many others who were clients of the law firm and whose information was unwittingly put into the government's hands. The Court found that the agreement to limited access did not prohibit a finding that the server was in the government's possession for Rule 16 purposes, and subjected that server to searches, along with protocols to protect the clients' privileged materials. *Gibson*, 2016 WL 3566198, at *2. Here, the inefficacy of the government's agreement as a shield to searching for discoverable information is even more clear, as the person whose claim of privilege reportedly motivated the agreement is a cooperating witness who voluntarily chose – while being represented by counsel – to put the material in the government's hands. We again request that the government search for and produce *all* discoverable material from the Montone phone, regardless of whether the government (unilaterally, without defendants' involvement) agreed not to access such materials. *See*, *e.g.*, *id.*

Sincerely,

Joshua L. Solomon
jsolomon@psdfirm.com

April 3, 2023
Page 4

cc:    Barry S. Pollack, Esq.
       William Fick, Esq.
       Daniel Marx, Esq.