UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES,

    Plaintiff,

v.

KINGSLEY R. CHIN,
ADITYA HUMAD, and
SPINEFRONTIER, INC.,

    Defendants.

NO. 21-cr-10256-IT

ORDER ON DEFENDANTS' MOTION TO COMPEL DISCOVERY (#107).

KELLEY, U.S.M.J.

    I.    Introduction.

Defendants are charged by indictment with Conspiracy to Violate the Anti-Kickback Statute, 18 U.S.C. § 371; Violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, and Conspiracy to Commit Money Laundering, 18 U.S.C. § 1956(h). (#1.) The government alleges that defendants made unlawful payments to surgeons in exchange for their using spinal medical products sold by SpineFrontier, Inc. ("SpineFrontier"), in surgeries paid for by federal health care programs. Dr. Chin, the principal owner of SpineFrontier, and Mr. Humad, SpineFrontier's Chief Financial Officer, are alleged to have carried out the scheme.

Defendants moved to compel discovery from the government pursuant to Rule 16(a)(1)(e) of the Federal Rules of Criminal Procedure, Local Rule 116.1(c) of the Local Rules of this Court, and the Fifth and Sixth Amendments to the United States Constitution. (#107 at 1.) They ask the court

first, to order the government to search all the contents of a phone belonging to Dr. Jason Montone, a potential government witness, for discoverable information. Second, they seek information from the government "concerning the interaction between the criminal and civil teams representing the government" in the parallel criminal and civil investigations of this matter. *Id*. The government filed an opposition to the motion. (#110.) Defendants filed a reply. (#113.) Dr. Montone filed a motion to intervene in the case and a notice of his intention to assert the attorney-client privilege over the communications at issue on his phone. (#117.) The court allowed Dr. Montone's motion to intervene. (#119.)[1] Defendants filed a response to Dr. Montone's motion. (#120.) The court heard argument on the motion on September 14, 2023, and took it under advisement. For the reasons set out below, the motion is allowed in part and denied in part.

II.   The Discovery Request Concerning Alleged Attorney-Client Communications on Dr. Montone's Phone.

Dr. Jason Montone is a surgeon who, in a separate case, pled guilty to Conspiracy to Violate the Anti-Kickback Statute, 18 U.S.C. § 371, by accepting kickbacks from the defendants, and to Obstruction of a Criminal Investigation of a Health Care Offense, 18 U.S.C. § 1518, by creating and providing the government with false documents (defendants in this case were not involved in the latter charge). (#110 at 2.) *See United States v. Montone*, 20-cr-10159-WGY. He pled guilty on October 30, 2020 (#14 on the docket in that case) and has not yet been sentenced. The indictment in the present case lists him as a co-conspirator and alleges that he received unlawful payments from the defendants. *See, e.g.*, #1 ¶¶ 5, 29-31, 34-36, 37(a)-(b), (e), 38(j), 42.

---

[1] *See In re Grand Jury Subpoena*, 274 F.3d 563, 570 (1st Cir. 2001) ("Intervention is appropriate as of right when the disposition of an action may impair or impede the applicant's cognizable interest. Fed.R.Civ.P. 24(a)(2). Colorable claims of attorney-client and work product privilege qualify as sufficient interest to ground intervention as of right.")

2

Dr. Montone cooperated with the government and is a potential witness in this case against the defendants. He previously voluntarily provided his phone to the government and consented to a search of it, but also gave the government the names, phone numbers, and email addresses of his two criminal defense attorneys and asked the government not to access attorney-client communications on the phone. (#110 at 2-3.) The government agreed. *Id*. at 3. The government asserts that it "segregated those [attorney-client] communications out of the collection of materials the prosecution team obtained from Dr. Montone's phone and produced the remainder of that material" to the defendants. *Id*.[2]

The defendants argue that because Dr. Montone did not attach a privilege log to his motion to intervene, he waived the privilege. (#120 at 3.) They cite *In re Grand Jury Subpoena,* 274 F.3d 563, 576 (1st Cir. 2001), for the proposition that "the failure to provide a log or other clear description of the documents amount[s] to a waiver 'fatal' to any claim of privilege." (#120 at 3.) That case is inapposite. In *In re Grand Jury* the First Circuit held that a motion to quash a grand jury subpoena properly was denied because intervenors, arguing that subpoenaed records concerning a corporation's "rebate program" were privileged, failed to produce a document index or privilege log, in contravention of Federal Rule of Civil Procedure 45(d)(2). *In re Grand Jury,* 274 F.3d at 575. The court noted that the intervenors did "not identify any particular documents as privileged, nor d[id] they specify the reasons why certain communications should be considered privileged." *Id*. at 569. Here, in contrast, Dr. Montone is seeking to protect a limited number of communications, which are

---

[2] At the hearing on the motion, neither the government nor Dr. Montone's counsel knew how many communications were in dispute. At the request of the court, the government reported after the hearing that a "digital investigator" identified 58 "hits" on Dr. Montone's phone between Dr. Montone and his attorneys, consisting mainly of text messages.

clearly identified, and which, he asserts, are protected by the attorney-client privilege because they are communications with his attorneys.[3]

Defendants next argue that by placing attorney-client communications in the hands of the government, Dr. Montone waived any privilege. (#107 at 9.) This argument also fails, as the record demonstrates that Dr. Montone clearly intended to protect his communications with his defense attorneys by describing them to the government and reaching an agreement with the government that it would not look at them. *See* #117 at 1; #110 exh. 1.

Finally, defendants argue that since the government has never looked at the communications, it cannot know whether they are, in fact, privileged. (#107 at 8.) The court agrees with defendants on this point, and discusses the remedy below.

The government counters that it does not have possession, custody, or control over Dr. Montone's communications with his lawyers and so has no discovery obligations with regard to the communications. (#110 at 3-4.) The court disagrees. The government relies heavily on one short paragraph in *United States v. Parnas*, No. 19-cr-725, 2021 WL 2981567, at *8-9 (S.D.N.Y. July 7, 2021), in which the court said that search warrant materials that were in the custody of a special master who was conducting a privilege review and materials that were in the custody of a "filter team" were not subject to production under Fed. R. Crim. P. 16 "to the extent that materials do not become available to the case team as a result of those processes." *Id*. at *9. Obviously, in that case a special master and a filter team examined materials to see whether they were privileged. This case is different for the simple reason that here no one has reviewed the materials in question for privilege.

---

[3] Other cases cited by defendants are even further off the mark than *In re Grand Jury*, and do not warrant discussion. *See* #120 at 2-3.

4

In *United States v. Gibson*, No. 15-cr-10323-IT, 2016 WL 3248206 (D. Mass. June 10, 2016), *objections overruled and order amended by*, No. 15-cr-10323-IT, 2016 WL 3566198 (D. Mass. June 24, 2016), the government served a grand jury subpoena on a non-party law firm for certain records. 2016 WL 3348206, at *1. Rather than sifting through many documents to produce responsive material, the law firm provided the government with a copy of an entire server, which contained numerous privileged documents having nothing to do with the litigation, subject to an agreed-upon search protocol. *Id*. When defendants were indicted, a dispute arose as to whether the government was "in possession" of the entire server, given that the government's right of access to files was limited by the protocol agreement. *Id*. Magistrate Judge Cabell held that the government possessed all the materials: "No party has provided any persuasive authority holding that a protocol agreement such as the one used here can render material which is indisputably physically held and controlled by the government as somehow outside of its custody, possession or control for purposes of its discovery obligations." *Id*. at *2. District Court Judge Talwani, reviewing the order, agreed, although she held that given that the server contained many privileged documents, the law firm ought to provide a privilege log to the government and defendants. 2016 WL 3566198, at *2-3.

This court, like the court in *Gibson*, finds that the government is in possession of the alleged attorney-client communications in question for purposes of its discovery obligations. While the court anticipates that the communications are likely privileged, nevertheless, they should be examined to see if, in fact, they are. As both the government and Dr. Montone urge (#110 at 7 [government]; #124 at 5, 24 [Dr. Montone, transcript of hearing]), the court finds that the appropriate next step is for Dr. Montone to review the communications at issue and create a privilege log. The log should be provided to defendants and to the government by Tuesday, October 17, 2023. The log should identify the

5

privilege asserted and the parties to each communication and who they are, for example, if someone working for an attorney is included on the communication, the log should explain that person's role. Further, given the age of this case and the need for discovery to move forward as efficiently as possible, by Tuesday, October 17 the log should be provided to this court together with any communications Dr. Montone asserts are privileged, ex parte, and the court will review the log and those communications. After review of the communications, the court will notify the parties concerning next steps.

    III.    The Discovery Request Concerning Interactions Between the Criminal and Civil Teams, and Any Overlap in Their Interactions with Witnesses.

        A.    The defendants' request.

The government is proceeding against the defendants both in this criminal action and in a parallel civil action in this District, *United States v. Spine Frontier, Inc., et al.*, 15-cv-12908-RWZ. Defendants assert that the government "has, at a minimum blurred the lines between the two cases against the defendants in ways that give rise to concerns warranting further inquiry." (#107 at 10.)

Defendants requested the following discovery from the government:

> Provide an affidavit(s) detailing the nature, extent, substance and timing of your interaction and your case agents' interaction with civil investigators or civil government attorneys, including all communications about the subject of this action between, on the one hand, criminal prosecutors and/or government investigators and, on the other hand, civil government attorneys and/or investigators, along with copies of any substantive written communications.

(#96 at 1 [discovery letter].)

The government refused to provide the information. (#110.)

Defendants argue that the court should order the government to provide the requested discovery first, because two Assistant United States Attorneys entered appearances in both the civil

6

and criminal matters. *Id.* at 11. One appeared in the civil case in 2015, withdrew from that case in 2020, and appeared in this action in 2021. *Id*. at 12. The other appeared in the civil action in 2018, withdrew in 2020, and appeared in this case in 2021. *Id*. This case was indicted on August 30, 2021. (#1.)

Defendants further argue that "the timing of the indictment in this action, in relation to failed efforts to resolve the civil matter, is at least suspicious." (#107 at 12.) They explain that in January 2021, when counsel for defendants and the government were discussing settlement of the civil action, the government asked defendants to make factual admissions consistent with the civil complaint's allegations. In June 2021, discussions broke down and negotiations ceased. *Id*. at 12-13. As noted above, defendants were indicted on August 30, 2021. (#1.) Defendants argue that the fact that the government insisted on factual admissions to resolve the civil case "strongly suggests that the government may have been attempting to use the civil case, and the prospect of resolving that case to obtain evidence--in the form of admissions from the defendants--that it then planned to use against the defendants in a criminal proceeding." (#107 at 13.) The fact that the government indicted defendants soon after the settlement discussions failed in August 2021 "raises concern that the indictment was used to pressure the defendants to revise their settlement position in the civil case." *Id.* Defendants note that if the government's strategy was to pressure defendants into settling the civil matter by indicting them, such a strategy worked, as defendants have now agreed in principle to resolve the civil case. *Id*. at 13-14.

Finally, defendants point out that government attorneys and investigators have interacted with surgeons and others who are material witnesses, and any "threats of prosecution to these witnesses, and any express or implicit understanding about whether they will be prosecuted, are directly relevant

to potential theories of the defense." *Id*. at 15. One potential defense theory is that the surgeons, not defendants, are responsible for any wrongdoing, and so any promises by the government's civil and/or criminal teams concerning prosecution are exculpatory. *Id*.

Defendants argue that counsel for a witness "has reported that the government expressly tied the avoidance of criminal charges to a favorable civil resolution," telling the witness that he would not be prosecuted criminally if he resolved the civil case. *Id*. at 14-15. The negotiations that led to a civil settlement for the witness were "conducted on the government's behalf primarily by two of the government's attorneys who later appeared on the *criminal* team in this matter." *Id*. at 15 (emphasis in original). The support for this allegation comes from an affidavit from an attorney, Seth B. Orkand, who represents Mr. Humad in the civil case. (#109 at 1.) In the affidavit, Mr. Orkand describes the negotiations of the defendants with the government to attempt to settle the civil matter, and then concludes with the account of an unnamed attorney who represented an unnamed witness who told Mr. Orkand that "the government provided assurances to the witness's counsel that the witness would not be criminally prosecuted if he agreed to a civil settlement (which he ultimately did, and was not thereafter charged)." *Id*. at 3.

B.  The government's response.

The government asserts that the defense motion sets out "an incomplete narrative that leaves the misimpression that the government improperly sprung a criminal case to force the defendants to settle civilly." (#110 at 7.) "In fact," argues the government, "it was the defendants who *repeatedly* asked the government to entertain a civil resolution even when the government advised that the criminal matter remained ongoing." *Id*. at 8 (emphasis in original). The government states that there is nothing in the record to suggest that the government improperly misled the defendants about their

8

criminal exposure, hid the involvement of criminal prosecutors, or unfairly attempted to use the criminal proceedings to extract a civil settlement. *Id*. at 8-9.

Regarding the defendants' assertion that the criminal prosecutors' appearances in the civil and criminal matters suggest wrongdoing, the government points out that civil and criminal attorneys began investigating the defendants in 2015, and from the outset of their interactions with defendants, informed defendants that they were facing both civil and criminal prosecution. *Id*. at 9. The government quotes numerous communications with defense counsel from 2019 up to the time of the indictment in this case in which the government openly discussed the fact that defendants were facing both civil and criminal charges. *Id*. at 9-11. When the government decided to file the civil lawsuit against defendants, the two criminal prosecutors "removed [themselves] from the civil case in order to dispel any possible appearance that criminal prosecutors were improperly using the criminal investigation to advance the civil case." *Id*. at 11. The government represents that the separation took place a year and a half before the defendants' indictment, and more than a year before the June 15, 2021, civil settlement negotiations broke down. *Id*. "After the government filed its civil suit, no member of the government's criminal team directed or participated in any civil settlement discussion with the defendants—and the defendants do not contend otherwise." *Id.*

To support its argument that the defendants were never misled about their criminal exposure, the government cites an April 21, 2022, global resolution letter signed by counsel for SpineFrontier and Dr. Chin, directed at the civil and criminal government teams, that stated that defendants understood there were separate civil and criminal proceedings; that any discussions of settlement were voluntary; defendants could limit discussions to one proceeding or the other; defendants requested

9

that the government engage in settlement discussions "on a global basis"; and that defendants might terminate the discussions at any time. *Id*. at 11-12.

Concerning its discovery obligations with regard to the third-party surgeons, the government states that it has entered into civil settlement agreements and criminal plea agreements with several of them. *Id*. at 12. The civil settlement agreements are public and contain factual admissions, which the government routinely seeks in cases like the present one. *Id.* The government states: "At no time did the government promise any settling surgeon that entering into a civil settlement would prevent the government from pursuing criminal prosecution. Indeed the surgeon settlement agreements affirmed the exact opposite." *Id*. at 12-13.

The government asserts that it "has never taken the position … that civil aspects of the government's investigation lie beyond the reach of its *Brady*[4] and Rule 16 information." *Id*. It informed defendants that "it has searched all files of all pertinent agencies regardless of whether the investigators worked on this case, the related civil case, or both." *Id*.

C. <u>Discussion</u>.

As the government correctly states, there is "nothing improper about the government undertaking simultaneous criminal and civil investigations." (#110 at 14, citing *United States v. Stringer*, 535 F.3d 929, 933 (9th Cir. 2008).) What is improper is for the government to bring a civil action for the sole purpose of obtaining evidence for a criminal prosecution, or to fail to tell a defendant in a civil proceeding that he is facing criminal prosecution. *See United States v. Kordel*, 397 U.S. 1, 12-13 (1970). There is no evidence that the government did either of those things here.

---

[4] The reference is to the seminal case of *Brady v. Maryland*, 373 U.S. 83 (1963), which stands for the proposition that a prosecutor's suppression of material evidence favorable to an accused upon request violates due process.

The court sees nothing nefarious in the timing of two Assistant United States Attorneys' entering appearances in the civil case, withdrawing from that case, and then entering appearances in the criminal case. As the government states, Department of Justice policy directs criminal and civil prosecutors to coordinate efforts from the start of cases and through investigation and resolution. (#110 at 16.) *See* U.S. Dep't of Just., Justice Manual, §§ 1-12.000 (2020). Where civil and criminal investigations are joint, as they were here, the government has a duty to review the documents arising from "those joint efforts to determine whether there is *Brady* material that must be disclosed." *See United States v. Gupta*, 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012); *see also United States v. Prange*, No. 11-cr-10415, 2012 WL 3263606, at *1 (D. Mass. August 7, 2012). The government has acknowledged its duty here to review both the criminal and civil case materials for discoverable evidence. (#110 at 13.) Concerning the scope of its search, as the government stated at oral argument, the government's review for *Brady* materials included "the files of attorneys, of staff, of law enfocement agents, or anybody else who worked on the civil aspects of the joint investigation or criminal aspects of the joint investigation." (#124 at 45.) The court understands this to mean that the government has reviewed all emails and other communications between the civil and criminal teams, including attorneys and investigators, to look for discoverable information, which of course includes any *Brady* material, including but not limited to promises to witnesses.

The court finds nothing concerning about the timing of the criminal indictment or the attempts by the parties to resolve the civil matter. The government, in attempting to negotiate a civil settlement, repeatedly informed defendants that they were still facing criminal charges. Once indicted, if defendants felt they were disadvantaged by facing simultaneous civil and criminal cases, they could

11

have moved to stay the civil case pending resolution of the criminal case, which is commonly done. Defendants chose not to do that here, however.

Concerning the information in the affidavit by Attorney Orkand, obviously, if the government promised a potential witness against the defendants that he would not be prosecuted criminally if he made factual admissions in order to settle the civil case against him, this information would be exculpatory and should be provided to defendants. Unfortunately, the affidavit is signed by someone who does not have first-hand knowledge of the matter, and it is impossible even to know who the witness, his attorney, or the other parties to this alleged communication are, because the affidavit does not reveal that information. The court will not convene an evidentiary hearing, as defendants urge it to (#113 at 20), on this incomplete, second-hand information.

In sum, the court will not order the government to provide defendants with the detailed information requested, including all communications between investigators and attorneys on the civil and criminal cases. The request is overbroad, and the court agrees with the government that an answer would include privileged communications and work product. (#110 at 1.)

IV.  Conclusion.

For the above reasons, the court allows in part and denies in part defendants' motion to compel discovery (#107). By Tuesday, October 17, 2023, Dr. Montone shall provide the parties with a privilege log concerning his alleged privileged communications with his attorneys. He shall provide the log together with the communications, ex parte, to the court on the same day.

/s/ M. Page Kelley
M. PAGE KELLEY
October 13, 2023                                           United States Magistrate Judge