UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KINGSLEY R. CHIN,<br>ADITYA HUMAD<br><br>                 Defendants. | No. 1:21-cr-10256-IT |

**GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE
ANY EVIDENCE OR ARGUMENT CONCERNING LACK OF
PATIENT HARM OR ABSENCE OF MEDICALLY UNNECESSARY SERVICES**

The government submits this motion *in limine* in support of its argument that the Court should preclude Defendants Kingsley Chin and Aditya Humad from introducing any evidence, or making any argument to the jury, concerning the lack of patient harm or the absence of evidence of medically unnecessary surgeries.

**BACKGROUND & UNDERLYING LAW**

The Indictment charges Defendants Chin and Humad with one count of conspiracy to violate the Anti-Kickback Statute ("AKS"), in violation of 18 U.S.C. § 371, and four counts of AKS violations under 42 U.S.C. § 1320a-7b(b)(2).[1] In brief, the Indictment alleges that Defendants Chin and Humad operated sham consulting arrangements with certain surgeons. Dkt. No. 1. Rather than pay certain surgeon-consultants for time spent performing actual consulting, the Defendants paid those surgeons simply for the latter group's use of

---

[1] The Court dismissed the money laundering count (Count 8) on July 3, 2024, Dkt. No. 211, and the government dismissed two AKS counts (Counts 6 and 7) against Defendants Chin and Humad on January 17, 2025. Dkt. No. 225.

SpineFrontier's products in spine surgeries reimbursed by federal health care programs. The Indictment does not allege that patients suffered harm or that any surgeons performed medically unnecessary surgeries.

The AKS "serves to protect patients from doctors whose medical judgments might be clouded by improper financial considerations." *United States ex rel. Witkin v. Medtronic, Inc., et al.*, No. 11-cv-10790-IT, 2024 WL 1892405 at * 14 (D. Mass. March 31, 2024) (internal quotations and citations omitted). The AKS prohibits the kickback payor from knowingly and willfully offering or paying "any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind . . . to any person to induce such person" to "purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2).

The text of the AKS does not require the government to show patient harm or medically unnecessary surgeries. *See* 42 U.S.C. § 1320a-7b(b)(2). Courts that have considered these issues have confirmed that plain language reading of the statute. In *United States v. Patel*, 778 F.3d 607 (7th Cir. 2015), the Seventh Circuit stated that the government was under no obligation to prove patient harm. *Id*. at 615 n.5 ("There is no allegation in this case that Grand provided subpar treatment to any patients certified by Patel or that those patients suffered any tangible harm. This is also irrelevant to our legal determination."). Similarly, in *United States v. Eggleston*, 823 Fed. App'x 340, 344 (6th Cir. 2020) (citations omitted), the Sixth Circuit held that the AKS "makes no distinction between kickbacks earned from medically necessary services and those earned from unnecessary ones." *See also United States v. Vora, et al.*, 488 F. Supp. 3d 554, 565 (W.D. Ky. 2020) ("Medical necessity is not relevant for the AKS theory of liability.") (citing *Eggleston*,

823 Fed. App'x. at 344). This is because, as the First Circuit has held, the "gravamen of Medicare Fraud is inducement." *United States v. Bay State Ambulance and Hospital Rental Services, Inc., et al.*, 874 F.2d 20, 29 (1st Cir. 1989) (citing *United States v. Greber*, 760 F.2d 68, 71 (3d Cir. 1985) ("Even if the physician performs some service for the money received, the potential for unnecessary drain on the Medicare system remains. *The statute is aimed at the inducement factor.*") (emphasis in original)).

Courts across the country also consistently have held that the government need not prove actual inducement in AKS cases, or AKS-predicated False Claims Act ("FCA") cases. Indeed, this Court held in *United States ex rel. Bawduniak v. Biogen Idec, Inc.*, that in the context of an AKS-FCA case, a relator need not prove that the claim "was the result of a quid-pro-quo exchange or would have been submitted absent the kickback." No. 12-cv-10601-IT, 2018 WL 1996829, at *3 (D. Mass. Apr. 27, 2018). Moreover, in two recent appeals, the government successfully argued that the AKS does not require that a kickback corrupt or skew a provider's or a patient's medical decisions to fall within the AKS's ambit. *See Pfizer, Inc. vs. HHS, et al.*, 42 F.4th 67, 74 (2d Cir. 2022) and *Pharm. Coal. For Patient Access v. HHS, et al.*, 126 F. 4th 947, 959 (4th Cir. 2025).

## ARGUMENT

The Court should exclude any evidence or argument from the Defendants concerning the lack of patient harm or the absence of medically unnecessary surgeries. The text of the AKS plainly contemplates that AKS defendants may be convicted merely for "offer[ing]" illegal remuneration. 42 U.S.C. § 1320a-7b(b)(2). It is axiomatic then that the AKS does not require the government to prove that a recipient (i) received remuneration *and* (ii) that the patient suffered as a consequence of the physician's decision to use the Defendants' products. Here,

although not legally required, notwithstanding the above, the government does intend to prove that certain surgeons received remuneration from Defendants Chin and Humad.  The government, however, is not required, and does not intend, to introduce evidence concerning patient harm or medically unnecessary surgeries.  *Eggleston*, 823 Fed. App'x. at 344 ("The crime at issue makes no distinction between kickbacks earned from medically necessary services and those earned from unnecessary ones.").  Consistent with Federal Rules of Evidence 401 and 402, the Court should exclude any such evidence or argument from the Defendants.  *See, e.g.*, Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Even assuming that the absence of patient harm or medically unnecessary surgeries holds any relevance to the charges in the Indictment, the Court should still exclude any evidence or argument on those issues from the Defendants.  *See* Fed. R. Evid. 403.  The probative value of the Defendants' introduction of those issues into this case is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury.  *Id.*  The jury in this case need only focus on whether the Defendants offered (and paid) illegal remuneration in the form of sham consulting fees to certain surgeons.  Given that the AKS is a prophylactic statute, designed to prevent the *possibility* of patient harm and medically unnecessary procedures, the question of whether any particular surgery caused patient harm or lacked medical necessity is irrelevant, and references to those absences will only confuse the issues, mislead the jury, and encourage nullification.  *See Eggleston*, 823 Fed. App'x. at 344 ("To the contrary, evidence from patients praising Eggleston for helping them to get necessary services, albeit illegally, might run the risk of currying jury sympathy with *no countervailing probative value*.") (emphasis added); *see also United States ex rel. Bawduniak*, 2018 WL 1996829, at *2 (Congress intended the AKS "to strengthen the capability of the Government to detect, prosecute, and punish fraudulent activities

under the [M]edicare and [M]edicaid programs, . . . because fraud and abuse among practitioners . . . is relatively difficult to prove and correct.'") (cleaned up).  Moreover, proving that any specific surgery caused patient harm or lacked medical necessity would likely lead to a confusing sideshow, or minitrial, that would shed no light on whether Defendants Chin and Humad intended to, and did, pay illegal kickbacks.

Accordingly, because the AKS does not require the government to prove patient harm or medically unnecessary procedures, and because any argument from the defense concerning the same would only mislead or confuse the jury and carries the danger of unfair prejudice, the Court should preclude the Defendants from raising these issues via evidence or argument.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court grant the government's motion *in limine*.

LEAH B. FOLEY
United States Attorney

*/s/ Abraham R. George*
ABRAHAM R. GEORGE
CHRISTOPHER LOONEY
MACKENZIE A. QUEENIN
Assistant U.S. Attorneys
1 Courthouse Way
John Joseph Moakley U.S. Courthouse
Boston, MA 02210
(617) 748-3100

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, Abraham R. George, hereby certify that the parties have met and conferred and in good faith have attempted to narrow the issue before the Court. However, the parties were unable to arrive at a resolution.

Date: February 18, 2025　　　　　　　　　　　　*/s/ Abraham R. George*
　　　　　　　　　　　　　　　　　　　　　　　　Abraham R. George
　　　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system on February 18, 2025, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) (with paper copies to be sent to those indicated as non-registered participants).

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Abraham R. George*
　　　　　　　　　　　　　　　　　　　　　　　　ABRAHAM R. GEORGE
　　　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney